In the Matter of JACK CHADRJIAN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 30, 1992

**APPEARANCES OF COUNSEL**

*William H. Greilsheimer* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Weinstein & Weinstein* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Jack Chadrjian, was admitted to the practice of law in New York by the First Judicial Department on June 29, 1953. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.16 (c) (1), suspending respondent from the practice of law, effective immediately, and until a determination of the respondent's capacity to continue the practice of law is made in proceedings instituted in accordance with 22 NYCRR 603.16 (b).

In support of the petition the Committee states that by letter dated September 15, 1989, Mrs. Margaret Browne filed a grievance with the Committee against respondent. Mrs. Browne, then 89 years old and a widow for approximately 19 years, complained that respondent, her attorney at the time, had pursuaded her to sell her two income-producing brownstones in 1986 to respondent's nephew at an unfairly low price and without first advising her that she would be receiving a purchase-money mortgage for $200,000 of the $340,000 price. Mrs. Browne stated in her letter that she learned only after the closing that the purchaser was CEA Associates and not respondent's nephew. Further, Mrs. Browne alleged that she discovered only in 1989, when one of the properties was to be sold by CEA Associates for $410,000, that respondent, her attorney in her sale to CEA Associates, was one of the owners of CEA Associates.

In September 1989, Mrs. Browne sued respondent alleging undue influence, breach of a fiduciary relationship and malpractice. Mrs. Browne's lawsuit was settled on June 19, 1991 by payment to her of approximately $330,000.

By a letter dated October 4, 1989, responding to Mrs. Browne's grievance, respondent advised the Committee that he had represented Mrs. Browne since shortly after her husband's death in 1970, that CEA Associates was the "legal entity * * * used to purchase the property on behalf of my nephew and his father," and that respondent held "no shares or interest in the partnership."

On or about December 10, 1991, the Committee served respondent with a notice and statement of charges and on or

about December 17, 1991, respondent, by counsel, served an answer denying all the charges.

With respect to the charges relating to respondent's failure to disclose to Mrs. Browne his interest in the purchaser while representing her in the sale, the Committee asserts it has documentary evidence, including letters from respondent to Mrs. Browne, to her daughter and to the Committee, affirmatively stating that Michael Derian (and occasionally Michael's father) and members of his family were the purchasers of the properties from Mrs. Browne and either denying or not disclosing that respondent had an interest in CEA Associates.

However, other documents in the possession of the Committee show that respondent had a very substantial and controlling interest in CEA Associates. The documents include (1) tax returns of CEA Associates for 1986, 1987 and 1988 showing that respondent had a 60% interest and his wife a 10% interest in CEA Associates (the tax return for 1989 switches these interests) and that, contrary to respondent's representations, Michael Derian and Albert Derian each had only a 5% interest in CEA during all those years, (2) canceled checks of CEA Associates showing that its funds were distributed substantially in accordance with the tax returns (70% to respondent and his wife; 5% to each Derian), (3) certificates of limited partnership interest notarized by respondent which are consistent with the first three years' tax returns, and (4) public filings and tax returns showing that the general partners of CEA Associates were respondent and a corporation he controlled.

The Committee states that in addition to the charges relating to respondent's concealment and misrepresentation of his financial interest in the transaction with Mrs. Browne and his engaging in a prohibited transaction with a client, respondent is also charged with other serious unethical practices including failing to account for interest on escrowed funds held in an account which respondent now admits earned interest and serving simultaneously as counsel and a broker (through a controlled corporation) to the seller in the same transaction. The Committee asserts that there is substantial, unrefuted evidence in support of these charges as well.

A hearing on the charges was originally scheduled for February 13, 1992 and rescheduled for February 27, 1992.

After a telephone conference on January 28, 1992, respondent's counsel was advised that the Chair would not grant an

adjournment of the hearing without a report of a physician and that the Committee would seek respondent's suspension from the practice of law if he contended he was too ill to defend himself. On February 5, 1992 another telephone conference was held and respondent's counsel undertook to deliver an affidavit of respondent's cardiologist, and thereafter on February 24, 1992 respondent's counsel delivered by facsimile to the Hearing Panel Chair and the Committee's counsel the report of Joseph H. Levine, M.D., dated February 21, 1992.

In this report, Dr. Levine stated that respondent has been his patient for four years. He reported respondent is a man in his 60's with a history of severe ischemic cardiomyopathy and recurrent refractory sustained ventricular tachyardia. He has been through two open heart operations the last being in approximately August 1991. Dr. Levine further stated, *inter alia,* as follows:

"In my professional medical opinion, Mr. Chadrjian must avoid all physical and emotional stress. These types of stress may not only lead to clinical deterioration but also to sudden cardiac death.

"He absolutely cannot participate in any meaningful manner in any court hearings (either those that he is defending or those that he is trying). In addition, he can absolutely not participate in a defense of any charges brought against him personally. I believe that subjecting him to any of these types of stresses would be extremely harmful to him and might lead to his demise. I do not foresee his being able to participate in these types of activities at any time in the future as his condition is not a reversible one."

Based upon Dr. Levine's report, respondent's application for an adjournment sine die of the hearing was granted by the Hearing Panel Chair.

Based upon the undisputed fact that respondent contends that he is suffering from a disability by reason of illness which makes it impossible for him adequately to defend himself, the Committee asserts that the court should suspend respondent pursuant to 22 NYCRR 603.16 (c) (1).

By affidavit dated March 19, 1992, respondent states that he opposes the Committee's application for an order of suspension during the pendency of this action. Respondent specifically and categorically denies each and every allegation of misconduct and claims that the charges are wholly unfounded

and without merit. Respondent also asserts that he has substantial verifiable defenses to each charge.

Respondent asserts that he has repeatedly stated to the Committee's counsel that full and complete disclosure was had not only with the complainant, but also with her adult daughter; that the complainant received independent professional advice and counsel from a financial and real estate consultant selected by her and her family; that the conduct of respondent was ultimately in no way inimical to the interests of the complainant; and the conduct of respondent was in no way inappropriate under the rules or practice of this court or of the profession. According to respondent, a complete review of this matter will demonstrate that full disclosure was at all times made to the complainant and her family.

Respondent states that he stands "ready to defend myself at a full hearing of the charges and welcome the opportunity to cross-examine the complainant and any other witnesses presented by Petitioner."

Respondent asserts that he does not choose "to allow my present physical condition to jeopardize my good standing and reputation in the social and professional community and I respectfully insist upon the right to defend myself at a full hearing of the baseless charges filed herein."

Respondent states that he is presently recovering from his most recent hospitalization at St. Francis' Hospital. He asks the court not to impose a suspension but rather allow him a short period of recovery, secluding this matter for a full hearing. Whether or not fully recovered, respondent asserts that it is his intention to participate in a defense of this case.

We note that respondent concedes in his affidavit that "by reason of my illness, I have been unable to participate meaningfully in my defense or assist my attorney in reviewing this matter."

Respondent's physician concluded in his report that respondent will not be able to participate in any hearing "at any time in the future as his condition is not a reversible one" and in his affidavit, respondent does not challenge any of the findings of his physician, but simply asserts his readiness to defend himself at such a hearing.

22 NYCRR 603.16 (c) (1) provides in pertinent part as follows: "(c) *Procedure when respondent claims disability during course of proceeding.* (1) If, during the course of a disciplinary proceeding the respondent contends that he is suffering

from a disability by reason of physical or mental infirmity or illness, or because of addiction to drugs or intoxicants which makes it impossible for the respondent adequately to defend himself, this court thereupon shall enter an order suspending the respondent from continuing to practice law until a determination of the respondent's capacity to continue the practice of law is made in a proceeding instituted in accordance with the provisions of subdivision (b) of this section."

There is no dispute that respondent suffers from a disability by reason of physical infirmity or illness, which makes it impossible for him to adequately defend himself, even though respondent insists he be allowed, nevertheless, to appear at a hearing on the charges.

Accordingly, the motion by the Departmental Disciplinary Committee for an order pursuant to 22 NYCRR 603.16 (c) (1), suspending respondent from the practice of law, effective immediately, and until a determination of the respondent's capacity to continue the practice of law is made in proceedings instituted in accordance with 22 NYCRR 603.16 (b), is granted.

MURPHY, P. J., ELLERIN, ASCH, KASSAL and SMITH, JJ., concur.

Application granted and respondent suspended from practice as an attorney and counselor-at-law in the State of New York, effective immediately, and until a determination is made as indicated, and until the further order of this court.